**FILED**
**Dec 18, 2025**
**07:40 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**





# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT COOKEVILLE

| | | |
|---|---|---|
| **DANIEL EICHOLTZ,** | ) | **Docket No. 2022-04-0223** |
| **Employee,** | ) | |
| **v.** | ) | |
| **RAE BUILDERS, LLC,** | ) | **State File No. 71858-2021** |
| **Employer,** | ) | |
| **And** | ) | |
| **BUILDERS MUTUAL INS. CO.,** | ) | **Judge Robert Durham** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

The Court held an Expedited Hearing on December 9, 2025, to determine whether RAE Builders must furnish psychiatric care recommended by Mr. Eicholtz's authorized treating physician. The Court finds that Mr. Eicholtz is likely to prove at trial that his authorized physician recommended psychiatric treatment and RAE Builders did not rebut the presumption that this treatment was necessary to treat the work-related injury. Thus, Mr. Eicholtz's request for a panel of psychiatrists is granted.

### History of Claim

Mr. Eicholtz suffered a calcaneus fracture and tendon tear in his right foot and ankle when he fell off a ladder on October 3, 2021. RAE Builders accepted the claim and authorized treatment with orthopedist Chase Corn. Mr. Eicholtz had two surgeries and extensive physical therapy on his leg. In addition to Dr. Corn, Mr. Eicholtz treated with Dr. Jeffrey Hazlewood and spine surgeon Daniel Burval to determine if his complaints were due to nerve or spinal injuries.

The parties deposed Dr. Corn on the issue of psychological care. Dr. Corn testified that February 2023 was the first time his office documented "aggressive communications" and "concerning language" from Mr. Eicholtz to his nurse. While he did not remember the specifics of those exchanges, he recalled suggesting that Mr. Eicholtz seek a second opinion from another orthopedist.

1

Mr. Eicholtz declined a second opinion, and Dr. Corn performed another surgery to remove hardware and repair another tendon. Mr. Eicholtz's symptoms did not appreciably improve, and Dr. Corn could not explain his continued pain. In June 2024, they agreed that Mr. Eicholtz should obtain a second orthopedic opinion.

However, when Mr. Eicholtz returned to Dr. Corn a month later, he had again declined a second opinion. He said he was confused and torn about how to proceed. He also brought a three-page letter with him that consisted of "an extensive list of grievances, complaints, and questions." At the visit, he once again agreed to get another orthopedic opinion, but he called shortly afterward, again changing his mind and wanting to proceed with treatment with Dr. Corn.

A few weeks later, Mr. Eicholtz contacted Dr. Corn's office multiple times, telling the nurses that he was "really struggling with anxiety and depression, and he felt he needed a psychiatric evaluation." He wanted Dr. Corn to prescribe one. Mr. Eicholtz's counsel then sent a letter to Dr. Corn asking if he believed the need for a psychiatric evaluation was more than 51% due to the work injury, and Dr. Corn checked "yes."

Dr. Corn explained at his deposition that he did not believe the question was asking if he felt the psychiatric issues were related to the injury but rather whether Mr. Eicholtz should get an evaluation. Dr. Corn was then asked directly if he believed that the need for a psychiatric evaluation was more than 50% related to his work injury. He responded:

A:      I have no idea of being able to relate any causation to his injury based – on his psychiatric issue. I don't even know what his psychiatric issue is. I'm not familiar with his psychiatric history, never treated him for that, so I don't have any way of determining that.
        . . .
Q:      And is this your only opinion with regard to a psych evaluation is, yeah, he probably needs one?

A:      Yes. I thought—I mean it was –there were people in my office were about him, about his well-being, and felt that he needed to seek help for that.

On cross-examination, Mr. Eicholtz's attorney asked Dr. Corn if he would "still endorse" the opinion he gave in response to the August 2024 letter. Dr. Corn responded, "[y]es, I still endorse that we recommended a mental health evaluation."

On redirect, RAE's attorney asked Dr. Corn if it was correct that he was not expressing an opinion that his referral for psychiatric treatment was causally related to the injury. Dr. Corn answered:

2

A:     Correct.  I'm not making any inclination or indication of the reason for or suggesting that his psychiatric complaints are related to his injury. . . . Merely that we felt it was important for him to get an evaluation.  I think just his communication of the severity of the issue that he was having led to some concern and some sense that we wanted him to get taken care of.

## Findings of Fact and Conclusions of Law

To obtain the requested psychiatric treatment, Mr. Eicholtz must show a likelihood of prevailing at a hearing on the merits.  Tenn. Code Ann. § 50-6-239(d)(1) (2025).

The parties essentially agreed to the facts.  Mr. Eicholtz sustained a compensable injury.  Dr. Corn referred Mr. Eicholtz for psychiatric care, and he believes this care is reasonable and necessary.  Dr. Corn did not give an opinion as to whether Mr. Eicholtz suffers from any psychological injury, or whether that injury, if it does exist, was primarily caused by his work accident.

The dispute is whether Dr. Corn's referral, without any opinion as to the merits of a claim for a psychological injury, is enough to require RAE Builders to provide a panel of psychiatrists.

Tennessee Code Annotated section 50-6-204(a)(3)(H) presumes that any treatment recommended by an authorized physician is "medically necessary" for treatment of the injured employee.

In *Beech v. G4S Secure Solutions (USA), Inc.*, 2020 TN Wrk. Comp. App. Bd. LEXIS 71, at *7, 8 (Dec. 16, 2020), the employee suffered a closed-head injury.  The treating neurologist referred him for a psychiatric evaluation for his "increased anxiety."  The employer refused to authorize treatment and instead wrote two letters to the treating doctor asking if he could say to a reasonable degree of medical certainty that the employee's psychiatric condition was primarily caused by his work injury.  The doctor replied "no" to both letters.

The trial court, citing section 50-6-204(a)(3)(H), ordered the employer to provide a psychiatric panel.  The Appeals Board affirmed, stating:

The issue is not whether Employee has come forward with sufficient evidence to convince the trial court that the referral was medically necessary or that his alleged psychological injury is causally related to the work incident.  That was not Employee's burden to prove at that stage of the case.  Instead, the relevant issue is whether Employee came forward with sufficient proof from which the trial court could conclude a panel-selected treating physician made a referral to a specialist.

3

*Id.*

*Beech* is on point with the facts here. Mr. Eicholtz proved that the authorized physician for his work-related injury referred him for psychological care. The referral was based on Mr. Eicholz's request, his assertions of anxiety and depression, and his behavior toward Dr. Corn and his staff. Dr. Corn's inability to say whether psychological treatment is causally related under the statute is not relevant at this stage. Thus, RAE Builders shall offer a panel of psychiatrists.

IT IS, THEREFORE, ORDERED:

1. RAE Builders shall submit a panel of psychiatrists from which Mr. Eicholtz may choose an authorized physician to provide reasonable and necessary treatment for psychiatric symptoms causally related to his work injury.

2. This case is set for a Scheduling Hearing on **February 23, 2026 at 2:00 p.m. Central Time**. The parties must call 615-253-0010. Failure to appear might result in a determination of the issues without the party's participation.

3. Unless an interlocutory appeal is filed, compliance must occur by **seven** business days of entry of this order as required by Tennessee Code Annotated section 50-6-239(d)(3).

**ENTERED December 18, 2025.**

**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

# APPENDIX

<u>Exhibits:</u>
1. Mr. Eicholtz's Rule 72 Statement
2. Dr. Corn's deposition with attached medical records

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Order was sent as indicated on December 18, 2025.

| Name | Mail | Email | Service sent to: |
|---|---|---|---|
| Chris Markel, Employee's Attorney | | X | cmarkel@markelfirm.com |
| Kitty Boyte, Employer's Attorney | | X | kitty.boyte@petersonwhite.com<br>denise.mccorkle@petersonwhite.com |

_____

**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.

   ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.

   ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*